UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THREVIA WEST | * |
| | * |
| | * |
| VS. | *          CIVIL ACTION NO.: |
| | * |
| LAFAYETTE CITY-PARISH | * |
| CONSOLIDATED GOVERNMENT; | * |
| Lt. SCOTT MORGAN, INDIVIDUALLY | *          JURY TRIAL DEMAND |
| AND IN HIS CAPACITY AS FORMER | * |
| CHIEF OF POLICE OF THE | * |
| LAFAYETTE POLICE DEPARTMENT; | * |
| OFFICER LAVERGNE; OFFICER HUVAL; | * |
| JOHN DOE 1; ABC INSURANCE COMPANY; | * |
| BOLGIANO & SHOTWELL | * |
| PROPERTIES, LLC.; A&L MOVERS LLC.; | * |
| AUSTIN SHOTWELL, INDIVIDUALLY AND | * |
| AS OWNER OF A&L MOVERS; | * |
| GRAYSON LINN BOLGIANO, JR. AKA | * |
| LINDY BOLGIANO, INDIVIDUALLY AND | * |
| AS OWNER OF A&L MOVERS; | * |
| JOHN DOE 2; JOHN DOE 3; | * |
| XYZ INSURANCE COMPANY 1; | * |
| XYZ INSURANCE COMPANY 2; AND | * |
| XYZ INSURANCE COMPANY 3 | * |

*********************************************************************************

## COMPLAINT WITH JURY DEMAND

**NOW INTO COURT,** through undersigned counsel, comes the Petitioner, Threvia West,

a person of the full  age of majority and domiciled in Lafayette Parish, State of Louisiana, who

respectfully represents  the following:

1.

Made Defendants herein are the following:

a) **LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT** (hereinafter
"LCG"), a local government entity and body politically created by statute, being a
municipality, and political subdivision of the State of Louisiana, but not an agency, or
department, or arm of the State of Louisiana, and owns, operates, manages, directs, and
controls the LAFAYETTE POLICE DEPARTMENT ("LPD"), which employs Defendant
Chief Morgan and Defendants John Doe #1 - #3;

b) **SCOTT MORGAN** (hereinafter, "Chief Morgan"), was at all relevant times to this

person of full age and majority and domiciled in Lafayette Parish. He is sued in his individual and official capacity;

c) **OFFICER LAVERGNE**, was at all relevant times to this Complaint a police officer in the Lafayette Police Department, is a person of full age and of majority, domiciled in Lafayette Parish. He is sued in his individual capacity;

d) **OFFICER HUVAL**, was at all relevant times to this Complaint a police officer in the Lafayette Police Department, is a person of full age and of majority, domiciled in Lafayette Parish. S/he is sued in his individual capacity;

e) **JOHN DOE #1**, was at all relevant times to this Complaint a police officer in the Lafayette Police Department with supervisory duties, is a person of full age and of majority, domiciled in Lafayette Parish. S/he is sued in his individual capacity;

g) **ABC INSURANCE COMPANY**, an insurance company authorized to do, and doing business in the State of Louisiana providing general liability coverage for Chief Morgan, Defendants Officer Lavergne, Officer Huval, John Doe #1, the LPD, and/or LCG for any and all acts and damages occurring from the incident giving rise to this Complaint.

h) **BOLGIANO & SHOTWELL PROPERTIES, LLC.**, a limited liability company registered to and doing business in the State of Louisiana.

i) **AUSTIN SHOTWELL, INDIVIDUALLY, AND as owner of A&L MOVERS**, a person of full age and of majority, domiciled in Lafayette Parish;

j) **GRAYSON LINN BOLGIANO, JR. AKA LINDY BOLGIANO, INDIVIDUALLY, AND as owner of A&L MOVERS**, a person of full age and of majority, domiciled in Lafayette Parish;

k) **A&L MOVERS LLC.**, an unregistered company/ trade name for a Louisiana partnership between previously named defendants Austin Shotwell and Lindy Bolgiano, in the State of Louisiana, Parish of Lafayette.[1]

l) **JOHN DOE 2, EMPLOYEE OF A&L MOVERS**, a person of full age and of majority, domiciled in Lafayette Parish.

m) **JOHN DOE 3, EMPLOYEE OF OF A&L MOVERS**, a person of full age and of majority, domiciled in Lafayette Parish

n) **XYZ INSURANCE COMPANY 1** an insurance company authorized to do, and doing business in the State of Louisiana providing general liability coverage for Bolgiano & Shotwell Properties, LLC.

o) **XYZ INSURANCE COMPANY 2** an insurance company authorized to do, and doing business in the State of Louisiana providing general liability coverage for Austin Shotwell.

---

[1] After a search of the Louisiana Secretary of State website, "A&L Movers, LLC" could not be located. However, defendants Shotwell and Bolgiano advertise themselves to be the owners of the business operating as "A&L Movers, LLC.," and are the registered agents for Bolgiano & Shotwell Properties, LLC. *See* Exhibits # 1 and #2

p) **XYZ INSURANCE COMPANY 3** an insurance company authorized to do, and doing  business in the State of Louisiana providing general liability coverage for Lindy Bolgiano.

q) At all times relevant to this Complaint, all Defendants acted under the color of state law.

r) THIS PETITION PUTS ON NOTICE ANY EXCESS POLICY COVERING THE LAFAYETTE CONSOLIDATED GOVERNMENT, THE LAFAYETTE POLICE DEPARTMENT, CHIEF SCOTT MORGAN, ANY EMPLOYEE OF THE LAFAYETTE POLICE DEPARTMENT, AND ANY POTENTIAL UNION POLICY COVERING THE INDIVIDUAL LOUISIANA POLICE DEPARTMENT NAMED INDIVIDUALLY IN THIS SUIT.

## JURISDICTION AND VENUE

2.

The United States District Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. 1983 and 28 U.S.C. 1331, 1343(a)(3), and 1367(a).

3.

The Western District of Louisiana is the appropriate venue to bring this Complaint, because  the facts that give rise to Petitioner's claims all took place within the Western District of Louisiana.

## FACTUAL ALLEGATIONS SURROUNDING DECEMBER 28, 2020

4.

At all times relevant to this Complaint, all of the Defendants—Chief Morgan, LCG, Officer Lavergne, Officer Huval, John Doe #1, **Bolgiano & Shotwell Properties, LLC, Austin Shotwell, Lindy Bolgiano,** A&L Movers, LLC. John Doe #2 and John Doe #3,—conspired and acted in concert together to injure the Petitioner and all of these Defendants are jointly,   severally, and/or *in solido* liable to and responsible for the Petitioner's  injuries and damages. Defendants Officer Lavergne, Officer Huval, and John Doe #1 were all law enforcement agents allegedly responding to a "theft of services" call which resulted in the  illegal seizure of and use of excessive force against Dr. Threvia West and causing the injuries to Threvia West described herein.

5.

On or about December 17, 2021, Complainant Dr. Threvia West began negotiations with Shawn (spelling) and Alex (spelling)--representatives for A & L Movers (herein referred to as Movers) over the phone to move her belongings from inside of her former residence located at 110 Robley Dr. 4108, Lafayette, La 70503 (herein referred to as Apt. 1) to her new place of residence at 1000 Robley Dr. 1233 (herein referred to as Apt. 2). The Complainant also negotiated with the Movers to move some items from Apt. 1 to Life Storage located in Lafayette, Louisiana.

6.

On or about December 28, 2021, Complainant and A & L Movers entered into a contract for $150.00 an hour for a total of 2 to 3 hours of work for a total estimate of $450.00. This contract was based on the following:

> The amount of furniture to be moved;
>
> The distance between Apt. 1 and Apt. 2;
>
> The distance between Apt. 1 and the storage unit; and
>
> The amount of hours it would take to move the furniture from Apt. 1 to Apt. 2 and from Apt. 1 to the storage unit.

Notably, neither Shawn, Alex nor any other representative from A & L Movers went to Apt. 1 to survey the amount of furniture to be moved.

7.

On December 28, 2021, at approximately 9 a.m., two male representatives[2] from A&L Movers arrived at Apt. 1 to move the items located inside. After observing the amount of items inside of the residence, Representative 1 offered a reduced rate to Complainant to move her furniture from Apt. 1. The reduced rate was for "half" the cost of the original hourly rate, i.e. $75 instead of $150. The Complainant accepted the reduced rate.

---

[2] Represntative 1 identified himself as Keith and Representative 2 is unknown. Both African American males.

8.

Due to the unorganization of the Movers, multiple items were delivered to the wrong address and the Complainant had to assist the Movers with moving and delivering her furniture to the two destinations. After eight hours of moving–which included an one hour lunch break—a third mover[3] arrived to assist with the move. There was no mention of an extra cost for the third mover.

9.

At approximately 8:30 p.m., Representative 1 presented a contract[4] to the Complainant for signing in the amount of $1,200.00. The Complainant refused to pay that amount, but was willing to pay the second negotiated rate of $750.00. At this point the representatives contacted the owners of A & L Movers (herein referred to as The Owners). While on the phone with The Owners, Representative 3 signed the contract, and again requested Complainant to sign the contact, to no avail.  The  Owners then directed the representatives to contact the Lafayette Police Department.

10.

Officers Lavergne and Huval of the Lafayette Police Department responded to the call for service.[5] Officer Huval engaged the Complainant and the representatives for Movers. During the early stages of the incident, Complainant tells Officer Huval that this is a "civil matter". Officer Lavergne intercedes and says, "Actually this is a theft of services."[6] The complainant pleads to Officer Lavergne that "I did not steal anything. I hired them for a certain rate for a certain amount of time." Officer Lavergne in turn replies, "Well guess what, I'm gonna call my supervisor and we are gonna talk to him." The complainant replies, "Okay".

11.

Officer Lavergne contacts his supervisor. While on the phone, the supervisor can be heard telling Officer Lavergne to "Issue her a summons." Officer Huval can be heard saying "Summons?" Officer Lavergne replies by saying, ``He said if she refuses to pay, write her a summons." Officer Lavergne exits his vehicle and begins to "Mirandize" the Complainant. Officer Lavargne then threatens Dr. West with an arrest if she does not pay The Movers. At no time did Dr. West refuse to pay the agreed upon cost. She only refused to pay the excess

---

[3] This representative/mover was only known as John. A Caucasion male.
[4] See Exhibit #3
[5] The entire interaction can be seen from the Body Worn Camera of Officer  Lavergne.
[6] There is no crime under the The Louisiana Criminal Code for Theft of Services.

16.

Chief Morgan had a responsibility in supervising and enforcing and implementing these training, discipline, and enforcement of these policies, customs, and practices.

17.

In Chief Morgan's official capacity, he was responsible for investigating use of force incidents involving LPD officers, as well as reprimanding and disciplining LPD officers, including  Defendant police officers Officer Lavergne and Officer Huval, who use excessive force and/or who fail to intervene  when present during the use of excessive force committed by fellow LPD officers.

18.

John Doe #1 had a responsibility in supervising and enforcing LPD training, discipline standards and enforcement policies, customs, and practices. This included supervision of  Officer Lavergne and Officer Huval.

19.

Based on the extreme misconduct of Defendants Officer Lavergne and Officer Huval and upon information and belief, Defendant Chief Morgan and Defendant LCG did not properly or adequately examine and scrutinize the background of Defendants Officer Lavergne, Officer Huval, and John Doe #1 to ensure that these officers could properly and legally carry out their duties as a police officer for the LPD.

20.

Based on the misconduct of Defendants Officer Lavergne and Officer Huval, and upon information and belief, Defendant Chief Morgan and Defendant LCG did not properly train, supervise, and/or discipline  Defendants Officer Lavergne, Officer Huval, and John Doe #1 with regard to proper police practices, including unreasonable seizures or the use of excessive  force when effecting arrests and the requisite probable cause necessary to constitutionally effectuate such an arrest.

Despite Lafayette Parish being a majority white/Caucasian Parish, there is an overt policy and practice whereby people of color are disproportionately stopped, detained, harassed, subjected to use of force, and shot by LPD officers.

25.

Between 2010 and 2019, statistics published by LPD show 1,172 use of force reports submitted by LPD officers, equating to one approximately every three days.

26.

In this same time period, data published by LPD show a pattern, custom, and practice of excessive use of force, including improper use of lethal force. According to their own statistics, between 2010 and 2019, there were 107 civil lawsuits filed against LPD.

27.

These lawsuits contain repeated allegations of illegal seizures, excessive use of force, and improper use of lethal force:

(a) In 2007, LPD was sued through LCG for putting a man in a chokehold— causing him to almost pass out, dragging him to a police car, and calling him a "stupid n***a;"

(b) In 2009, LPD was sued through LCG for killing a black man in a parking lot who was being approached for suspicion of the non-violent crime of auto theft;

(c) Also in 2009, LPD was sued through LCG for knocking a man down with such force that it rendered him unconscious, and refusing him necessary medications, which caused him to suffer seizures;

(d) In 2010, LPD, through the LCG, settled a suit wherein an officer put a man in a chokehold, drug him to police car, and called him a "stupid n***a;" the man almost passed out from loss of oxygen;

(e) In 2011, LPD was sued through the LCG and settled a case for snapping a motorist's arm bone in half during a traffic stop;

(f) In 2012, LPD was sued through LCG for tackling a woman from behind who was already handcuffed;

(g) In 2012, LPD was sued through LCG for wrestling a man to the ground in Wal-Mart and putting him in a chokehold;

(h) Also in 2012, LPD was sued through LCG for stopping a man as he crossed the street, striking

(i) In 2013, LPD was sued through LCG for shooting and killing a man who witnesses said was running away when shot;

(j) In 2016, LPD was sued through LCG for fatally shooting a man in the back as he fled a pursuit;

(k) Also in 2016, LPD was sued through LCG for officers repeatedly harassing and battering two teenage brothers;

(l) In 2017, the ACLU sued LPD through the LCG for taking a woman's camera who was documenting the violence of LPD officers against her son and deleting the evidence of their excessive force from the camera;

(m) In 2020, LPD was sued through LCG for the fatal shooting of a mentally ill man who was calmly walking away from officers, posing no danger to others;

(n) In 2021, LPD was sued through LCG for the violent arrest of an unarmed man sitting on a curb that resulted in him being tackled with such force that his head was brutally smashed into the concrete, causing extreme injury. In fact, one of the LPD officers who allegedly committed the unlawful use of force against the victim could be heard speaking to another officer on body camera video saying he would "have Sarge do a use of force to cover both of our asses."

(o) In 2017, LPD was sued through LCG for (1) excessive force; (2) unreasonable seizure (3) unlawful detention; and (4) unreasonable and unlawful arrest, in violation of the Fourth Amendment.

(p) Management and administrative officials in LCG and LPD were aware of several prior instances of police officers in its employ illegally and unlawfully violating the constitutional rights of its citizens, yet did nothing to investigate these incidences to determine the causes of these violations and take the necessary steps to preclude their recurrence.

28.

Numerous other lawsuits have been filed in federal court alone detailing unreasonable search and seizure, excessive use of force, improper training, improper hiring, and improper discipline against LPD.

29.

Additionally, in 2012, the LPD was sued for their lack of supervision and proper discretion in hiring and training officers, for their misconduct, and handling of evidence. Specifically, the plaintiffs alleged that the leadership of LPD "created, fostered, engendered, and

supported a police department which is fundamentally rotten to the core" and "outright concealment of police misconduct, retaliations, retributions, and reprisals against those who report such misconduct, a gross distortion of the truth."

30.

In 2020, an LPD officer yanked a woman from his police SUV and hogtied her as she lay face-down, bleeding in the street. The officer's force caused her to hit her chin on the floorboard and street, sustaining broken ribs and an injury to her chin.

31.

The above lawsuits and events demonstrate that the incident with Dr. Threvia West is not an outlier but rather part of a continuing pattern, custom, and practice of LPD as part of LCG targeting African Americans and other individuals and then committing excessive and unjustified use of force against such African Americans and other individuals.

32.

Upon information and belief, Chief Morgan and the LPD, as part of LCG, have not changed their hiring, training, or supervision policies and their enforcement despite this subject incident and the numerous use of force complaints and lawsuits filed against the LCG and its police department officers and police chief.

33.

Further, upon information and belief, Chief Morgan and the LPD, as part of LCG, has a history of not properly or adequately disciplining or firing officers, including Defendants Officer Lavergne, Officer Huval, and John Doe #1 when they engage in illegal or improper conduct, including making arrests without probable cause and using excessive force against citizens when effecting an arrest.

34.

Upon information and belief, Chief Morgan investigated the subject incident giving rise to this lawsuit, but did not properly or adequately discipline or reprimand Defendants Officer Lavergne, Officer Huval, and John Doe #1,  for their actions involving Dr. Threvia West.

35.

In addition to the numerous complaints and lawsuits alleging the use of unjustified excessive force by LPD police officers, Defendants Officer Lavergne, and Officer Huval, use of excessive force against Dr. Threvia West in this case is evidence of and shows a clear pattern of the  LPD's use of excessive, unjustified, and improper force against citizens of/in Lafayette Parish,  such as Dr. Threvia West.

36.

Defendants Officer Lavergne and Officer Huval's extreme misconduct and use of excessive force and illegal seizure was a product of this environment and undertaken pursuant to de facto policies, practices, and/or customs—both written and unwritten—of the LPD, the LCG, and Chief Morgan. Chief Morgan and/or the LCG are guilty of the following wrongful  acts, including but not limited to:

1. Failing to properly hire, supervise, and train LPD officers, including Officer Lavergne and Officer Huval

2. Failure to promulgate, train, and enforce an adequate and constitutional use of force policy;

3. Failure to promulgate, train, and enforce an adequate and constitutional de-escalation tactics;

4.  Failure to promulgate, train, and enforce an adequate and constitutional search and seizure policy;

5. Failure to promulgate, train, and enforce an adequate and constitutional non discriminatory law enforcement practices to protect African-American citizens of Lafayette Parish;

6. Failing to reprimand and discipline LPD officers, including Officer Lavergne and Officer Huval, who  engage in misconduct and use of excessive force;

7. Failing to reprimand and discipline LPD officers, including Officer Lavergne and

Officer Huval, who engage in misconduct and conduct illegal searches and seizures;

8. Failing to retrain and/or otherwise control LPD officers, including Officer Lavergne and Officer Huval, who engage in the use of excessive force;

9. Failing to retrain and/or otherwise control LPD officers, including Officer Lavergne and Officer Huval, who engage in illegal searches and seizures;

10. Failing to follow appropriate policies and procedures to address and correct repeated use of excessive force;

11. Failing to follow appropriate policies and procedures to address and correct repeated instances of illegal searches and seizures;

12. Failing to adequately investigate complaints and allegations of the use of excessive force, illegal searches and seizures, and other misconduct by LPD officers, including the complaints and allegations surrounding Officer Lavergne and Officer Huval;

13. Tacitly approving of LPD officers, includingOfficer Lavergne and Officer Huval, using their power and position to interfere with other citizens' rights;

14. As a matter of both policy and practice, Chief Morgan and the LCG facilitating the misconduct of Officer Lavergne and Officer Huval by failing to protect civilians from reckless indifference of the LPD's agents, servants, and employees; and

15. Allowing the practice and custom of a "police code of silence," resulting in LPD Officers, including Officer Lavergne and Officer Huval, refusing to report instances of police misconduct of which they are aware.

37.

At all times relevant to this Complaint, the conduct of Chief Morgan, the LCG, Officer Lavergne, Officer Huval, and John Doe #1 were in willful, reckless, and callous disregard for Dr. Threvia West's constitutional rights under federal and state law.

38.

As a direct result and proximate result of the conduct of Chief Morgan, the LCG, Officer Lavergne, Officer Huval, and John Doe, Dr. Threvia West has suffered and continues to suffer extraordinary damages, including the prolonged loss of liberty, emotional distress, and trauma, loss of the enjoyment of life, psychological harm, and pain and suffering, some of which may be permanent, as well as financial losses.

## DR. THREVIA WEST'S CAUSES OF ACTION

**Count I**
**Federal Constitutional Claims**
**Violation of 42 U.S.C. § 1983:**
**Unreasonable Seizure in Violation of Fourth and Fourteenth Amendment Rights**
**(Dr. Threvia West Against Defendants  Officer Lavergne and Officer Huval in**
**Their Individual Capacities)**

**39.**

As alleged above herein, the actions or inactions of Defendant officers  Officer Lavergne, and  Officer  Huval  violated  Dr.  Threvia  West's  rights  under  the  Fourth  and  Fourteenth Amendments to  be free from unreasonable seizures.

40.

As a result of the actions and inactions of Defendant officers  Officer Lavergne, Officer Huval, and John Doe #1, as alleged herein, Dr. Threvia West has suffered damages including: (1) the loss of liberty  and freedom; (2) mental and emotional injury; (3) physical injury, pain and suffering; and (4) any  other special and general damages and expenses, in an amount to be proven at trial.

**Count II**
**Federal Constitutional Claims**
**Violation of 42 U.S.C. § 1983:**
**Use of Excessive Force in Violation of Fourth and Fourteenth Amendment**
**Rights (Dr. Threvia West Against Defendants   Officer Lavergne and Officer**
**Huval in Their Individual Capacities)**

41.

As alleged above herein, the actions or inactions of Defendant officers  Officer Lavergne and  Officer  Huval  violated  Dr.  Threvia  West's  rights  under  the  Fourth  and  Fourteenth Amendments to  be free from the unlawful use of excessive force.

As a result of the actions and inactions of Defendant Officer Lavergne, Officer Huval and John Doe #1, as alleged herein, Dr. Threvia West has suffered damages including: (1) the loss of liberty  and freedom; (2) mental and emotional injury; (3) physical injury, pain and suffering; and (4) any  other special and general damages and expenses, in an amount to be proven at trial.

**Count III**
**Federal Constitutional Claims**
**Violation of 42 U.S.C. § 1983:**
***Monell* Claims**
**(Dr. Threvia West Against Defendant Chief Morgan in His Official Capacity, John Doe #1**
**in His Official capacity, and Defendant LCG)**

43.

The actions or inactions of the LCG,  Chief Morgan in his official capacity as the chief  of police for the LPD, and John Doe #1 in his official capacity of LPD supervising officer, as alleged in this Complaint, with respect to John Doe #1's, Chief Morgan's and LCG's  failures to properly and adequately train, supervise, and discipline Defendant officers Officer Lavergne and Officer Huval violated Dr. West's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from the unlawful use of force, directly or proximately causing Dr. West's injuries.

44.

The actions or inactions of the LCG, Chief Morgan, and John Doe #1 as alleged in this Complaint, violated Dr. West's Fourth and Fourteenth Amendments Rights to  the U.S. Constitution, directly or  proximately causing her injury and suffering by the LCG's, Chief Morgan's and John Doe #1's approval, use of, and/or failure to correct the unconstitutional policies, practices, patterns, and/or customs of the  LPD with respect to making decisions to arrest, and effecting the arrest of African Americans.

45.

The LCG, Chief Morgan, and John Doe #1 permitted, encouraged, tolerated, and knowingly acquiesced  in an official pattern, practice or custom of LPD officers, including LPD officers Officer Lavergne and Officer Huval, of violating the constitutional rights of the public at large, including Dr. Threvia West

46.

The LCG, Chief Morgan, and John Doe #1 had been put on notice of the need for policy and training in  the use of excessive force and race-based policing due to the numerous past injuries and deaths of  persons arrested by LPD officers.

47.

The actions of LPD officers Officer Lavergne and Officer Huval, as described herein, were unjustified,  unreasonable, unconstitutional, excessive and grossly disproportionate to the actions of Dr. Threvia West— who was not armed and did not pose a threat—and constituted an unreasonable search and seizure  effectuated through the use of excessive force and a deprivation of Dr. West's constitutional rights that  are secured to her by the Fourth and Fourteenth Amendments of the United States Constitution.

48.

The actions and inactions of LPD officers Officer Lavergne and Officer Huval described herein were in direct  violation of the constitution, law and regulations of the United States and the State of Louisiana.

49.

The LCG, Chief Morgan, and John Doe #1 condoned, approved, ratified, facilitated and knowingly  acquiesced in the actions of LPD officers Officer Lavergne and Officer Huval and

of its failure to properly investigate, adequately discipline and hold accountable LPD officers Officer Lavergne and Officer Huval for their actions.

50.

The violations of Dr. Threvia West's constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, her damages, and/or the conduct of Officer Lavergne and Officer Huval were directly and proximately caused by the actions and/or inactions of the LCG, Chief Morgan and John Doe #1, who have encouraged, tolerated, ratified, and have been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

a. Use of force by police officers;

b. Police officers' duties and responsibilities to engage in proper de-escalation techniques;

c. The proper exercise of police powers, including not limited to the making of an arrest and the use of force;

d. Police officers' duties not to unnecessarily use force;

e. The failure to identify and take remedial or disciplinary action against officers who were the subject of prior civilian or internal complaints of misconduct;

f. Failing to retrain and/or otherwise control officers who engage in excessive force and/or unjustified shooting against civilians;

g. Failing to follow appropriate policies and procedures to address and correct repeated use of excessive force;

h. The hiring and retention of officers who are unqualified for their employment positions;

i. Failure to require, discipline, and supervise their officers for not reporting illegal, impermissible, improper, or any other conduct of other officers that is unbefitting of an officer or violates department policies and protocols;

j. Officers' use of their status as a police officer to employ the use of force or to achieve ends not reasonably related to their law enforcement duties;

k. Officers' decision to target individuals because of previous encounters with said individual;

l. The failure of officers to follow established policies, procedures, directive, and instructions regarding arrests, use of force, and institution of criminal charges

17

under such circumstances as presented by this case;

m. The failure to properly sanction or discipline deputies who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other officers;

n. As a matter of both policy and practice, the LCG, Chief Morgan, and John Doe #1 facilitating the type of misconduct alleged herein by failing to protect civilians from reckless indifference or their departments' agents, servants, and employees.

51.

The LCG, Chief Morgan and John Doe #1 had actual or constructive notice of the deficiencies with the policies, practices and customs of the LPD that make officer misconduct a foreseeable consequence.

52.

The LCG, Chief Morgan and John Doe #1 knew, must have known, or should have known that the above referenced policies, practices, and/or customs, would likely lead to serious injury or death to citizens and that such injuries were foreseeable; yet, disregarded that risk.

53.

The aforementioned policies, practices and customs were inadequate in relation to the specific tasks LPD police officers must routinely perform and with respect to activities where there is an obvious need for proper policies, practices and customs and therefore, illustrated its deliberate indifference and/or reckless disregard to the consequences of officer misconduct.

54.

The LCG, Chief Morgan, and John Doe #1's above referenced policies, practices, and/or customs violated Dr. Threvia West's constitutional rights; and said policies, practices and/or customs were the moving force behind and proximate cause of said violations.

55.

The LCG, Chief Morgan, and John Doe #1's above referenced policies, practices and/or customs demonstrated a deliberate indifference to the constitutional rights of the public, including Dr. Threvia West's, and was the proximate cause of the injuries and damages sustained by her.,

56.

By failing to recognize or correct the deficiencies with his policies, practices and customs, the LCG, Chief Morgan, and John Doe #1 consciously disregarded the known and foreseeable consequences thereof.

57.

The LCG, Chief Morgan, and John Doe #1's deliberately indifferent policies, practices and customs were the moving force behind Dr. West's injuries and the deprivation of his constitutional rights.

58.

There is a direct causal link between the policies, practices and customs of the LCG, Chief Morgan, and John Doe #1 and the injuries to and violation of Dr. West's constitutional rights.

59.

As a direct and proximate result of the foregoing policies, practices and customs of the LCG, Chief Morgan, and John Doe #1, the violation of the constitutional rights of the public, including Dr. West, by LPD officers Officer Lavergne and Officer Huval, was substantially certain to occur.

60.

As a result of the foregoing policies, practices and customs of the LCG, Chief Morgan, and John Doe #1, Dr. West has suffered damages including: (1) the loss of her liberty and freedom; (2) mental and emotional injury; (3) physical injury, pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

**Count IV**
**State Law Claims**
**(Dr. Threvia West Against Defendant Chief Morgan in His Individual and Official Capacity, John Doe #1 i in His Individual and Official Capacity and  Defendant LCG)**

61.

The LCG, Chief Morgan, and John Doe #1 are responsible and liable to Dr. Threvia West for the damages and injuries she has suffered as a result of Defendant officers Officer Lavergne and Officer Huval actions and/or inactions  pursuant to Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair  it"; Louisiana Code of Civil Procedure Article 2316, which provides that "[e]very person is responsible for the damage he occasions  not merely by his act, but by his negligence, his imprudence, or his want of skill"; Louisiana Code of Civil Procedure Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but  for that which is caused by the act of persons for whom we are answerable, or of the things which  we have in our custody"; and Louisiana Code of Civil Procedure Article 2320, which provides that "[m]asters and employers are  answerable for the damage occasioned by their servants and overseers, in the exercise of the  functions in which they are  employed…responsibility only attaches, when the masters or employers…might have prevented the act which caused the damage, and have not done it."

62.

The actions and/or inactions of Defendant officers Officer Lavergne and Officer Huval, for which Chief  Morgan, John Doe #1, and the LCG are responsible for under the law of the State of Louisiana, constitute the  torts of:

a. Battery;

b. Assault; and

b. Intentional Infliction of Emotional Distress

63.

The actions and/or inactions of Chief Morgan and John Doe #1, as alleged herein, constitute the state law torts of:

a. Intentional Infliction of Emotional Distress;

b. Negligent Hiring;

c. Negligent Retention;

d. Negligent Supervision; and

e. Malfeasance in Office

64.

As a result of the above torts committed by the Defendant officers Officer Lavergne and Officer Huval, Chief Morgan, John Doe #1 and the LCG, Dr. Threvia West has suffered damages including: (1) the loss of her liberty and freedom; (2) mental and emotional injury; (3) pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

**Count V**
**State Law Claims**
**(Dr. Threvia West Against Defendants Officer Lavergne and Officer**

**Huval)**

65.

Defendants Officer Lavergne and Officer Huval are responsible and liable to Dr. Threvia West for the damages and injuries she has suffered as a result of said Defendants' actions and/or inactions pursuant to Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it"; Louisiana Code of Civil Procedure Article 2316, which provides that

"[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill"; and  Louisiana Code of Civil Procedure Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by  our own act, but for that which is caused by the act of persons for whom we are answerable, or of  the things which we have in our custody."

66.

The actions and/or inactions of Defendants Officer Lavergne and Officer Huval constitute the state  law torts of:

a. Battery;

b. Assault; and

c. Intentional Infliction of Emotional Distress

67.

The  actions  and/or  inactions  of  Defendant officers Officer Lavergne  and  Officer Huval constitute  violations  of  Petitioner's  Louisiana  Constitution  Article I  §5   Right to  Privacy be secure in her person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy

68.

As a result of the above torts committed by the Defendant officers Officer Lavergne and Officer Huval, Dr. Threvia West.  has suffered damages including: (1) the loss of her liberty and freedom; (2) mental and emotional  injury; (3) physical injury, pain and suffering; and (4) any other special and general damages and  expenses, in an amount to be proven at trial.

**Count VI**
**State Law Claims**
**(Dr. Threvia West Against Defendants Bolgiano & Shotwell**
**Properties, LLC, Austin Shotwell, Lindy Bolgiano, A&L Movers,**
**LLC., John Doe #2, and John Doe #3)**

69.

Defendants **Bolgiano & Shotwell Properties, LLC, Austin Shotwell, Lindy Bolgiano,** A&L Movers, LLC., John Doe #2, and John Doe #3, are responsible and liable to Dr. Threvia West for the damages and injuries she has suffered as a result of said Defendants' actions and/or inactions pursuant to Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it"; Louisiana Code of Civil Procedure Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill"; and Louisiana Code of Civil Procedure Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."

70.

The actions and/or inactions of Defendants **Bolgiano & Shotwell Properties, LLC, Austin Shotwell, Lindy Bolgiano, and** A&L Movers, LLC., John Doe #2, and John Doe #3 constitute the state law torts of:

a.   Intentional Infliction of Emotional Distress

71.

The actions and/or inactions of Defendants **Bolgiano & Shotwell Properties, LLC, Austin Shotwell, Lindy Bolgiano, and** A&L Movers, LLC., John Doe #2, and John Doe #3 constitute violations of:

a.   La. Civ. Code art. 1756;

c. La. Civ. Code art. 1994

72.

As a result of the above Louisiana torts and Louisiana civil code violations committed by the Defendants **Bolgiano & Shotwell Properties, LLC, Austin Shotwell, Lindy Bolgiano,** A&L Movers, LLC., John Doe #2, and John Doe #3, Dr. Threvia West. has suffered damages including: (1) mental and emotional injury; (2) pain and suffering; and (3) any other special and general damages and expenses, in an amount to be proven at trial.

## JURY TRIAL DEMAND

73.

Petitioner requests a trial by jury.

## PRAYER FOR RELIEF

74.

The Petitioner respectfully requests:

a. Compensatory damages as to all Defendants;

b. Special Damages as to all Defendants;

c. Punitive damages as to all Defendants sued in their individual capacity;

d. Reasonable attorneys' fees and costs as to all Defendants;

e. Such other and further relief as may appear just and appropriate

**WHEREFORE**, Dr. Threvia West prays that a copy of this Complaint is served upon all of the Defendants named herein, and that after all proceedings a judgment is rendered in favor of Petitioner and against all Defendants jointly, severally, and/or *in solido* for all relief deemed equitable under the law including attorney's fees and costs.

Case 6:21-cv-04431   Document 1   Filed 12/28/21   Page 25 of 25 PageID #:  25

Respectfully submitted,

_____
Ryan K. Thompson, LA Bar #38957
Attorney for Petitioner
12827 Country Ridge Ave
Baton Rouge, LA 70816
T: (323)271-8032
E: RKTsocialjustice@gmail.com

_____
Jessica F. Hawkins, LA Bar #38263
Attorney for Petitioner
P.O. Box 5072
Baton Rouge, LA 70802
T: (915)217-9192
E: jessicahawkins0421@gmail.com

*Counsel for Petitioner, Dr. Threvia West*