# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

THREVIA WEST

versus

CONSOLIDATED GOV'T OF
    LAFAYETTE, ET AL.

Civil Action No. 6:21-4431

Judge David C. Joseph

Magistrate Judge Carol B Whitehurst

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) on behalf of Lafayette City-Parish Government ("LCG"), Lt. Scott Morgan, Officer Huval, and Officer Lavergne (collectively referred to as "defendants") [Doc. 8]. The plaintiff opposes the motion [Doc. 12], and defendants filed a reply brief [Doc. 16]. For the following reasons, it is RECOMMENDED that the Motion to Dismiss be GRANTED IN PART AND DENIED IN PART, and that the plaintiff be permitted to amend her Complaint to address the deficiencies in her pleading as discussed herein.

## I.    FACTUAL BACKGROUND

The instant lawsuit arises out of an incident occurring on December 28, 2020, when the plaintiff scheduled movers to assist her in moving from one apartment to another. The plaintiff alleges that, prior to the move, she negotiated a set price with the moving company -- $450.00 (which was based on $150.00 per hour for 2-3 hours

1

of total work).  Doc. 2 at ¶ 6.  Plaintiff claims that the contract was then renegotiated at a lower rate.  Doc. 2 at ¶ 7. At the conclusion of the move which, according to the plaintiff, took longer due to the disorganization of the movers, the moving company provided the plaintiff with a bill for $1,200.00 and the plaintiff refused to pay. Doc. 2 at ¶ 9.  The moving employees then contacted their superiors at the moving company and were advised to call the police. Id.

Officers Lavergne and Huval of the Lafayette Police Department ("LPD") responded to the call and after discussion, told the plaintiff that she had potentially engaged in a theft of services. Doc. 2 at ¶ 10. Seeking additional guidance on how to handle the situation, Officer Lavergne contacted a police supervisor, who advised Officer Lavergne that if the plaintiff refused to pay the moving bill, Officer Lavergne should write her a summons. Doc. 2 at ¶11.  The plaintiff alleges that Officer Lavergne then read her Miranda rights and threatened her with arrest if she did not pay the moving bill.  *Id.* The plaintiff alleges that she argued at that time that she wasn't refusing to pay the entire bill but was refusing to pay the higher amount that was not agreed upon. *Id.* According to the plaintiff, both officers then escalated the situation when Officer Lavergne yelled at her and simultaneously grabbed her right arm, while Officer Huval grabbed her left arm, and placed her under arrest.[1] Doc. 2

---

[1]   Although the plaintiff references the "Body Worn Camera of Officer Lavergne" in her Complaint, and the defendants address the bodycam video in their briefing, none of the parties attached the video from that camera to any pleading or briefing.  Considering the foregoing, the Court is unable to evaluate the video in connection with the adjudication of this motion.

at ¶ 12.  The plaintiff alleges that she feared for her safety and agreed to pay the bill. *Id.*

On December 28, 2021, the plaintiff filed suit against several defendants, including LCG, Lt. Morgan, Officer Huval and Officer Lavergne.  Lt. Morgan is sued in his individual and official capacities, while Officers Huval and Lavergne are sued in their individual capacities only.  The plaintiff alleges violations of her Fourth and Fourteenth Amendment rights, the same rights secured under the Louisiana Constitution, and various causes of action arising under Louisiana law.  Plaintiff alleges Officers Huval and Lavergne used excessive force in arresting her.  Plaintiff further alleges a negligent training, supervision, hiring, retention, and discipline claim against LCG and Lt. Morgan, and state law claims of battery, assault, and intentional infliction of emotional distress against Officers Huval and Lavergne, with vicarious liability claims of the same nature against LCG and Lt. Morgan.

In the instant motion to dismiss, the movants seek dismissal of all of the plaintiff's claims on grounds she fails to state a claim for which relief can be granted. The motion is now ripe for review.

## II.    LAW AND ANALYSIS

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 668 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 232–33 (5ᵗʰ Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5ᵗʰ Cir.1996).  But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true.  *Id*.  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Twombly*, 550 U.S. at 555.  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.  *Lormand*, 565 F.3d at 255–57.  If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5ᵗʰ Cir.2007), the claim must be dismissed.

## B. Analysis

### 1. Official capacity claims against Lt. Morgan

The plaintiff alleges claims against Lt. Morgan in his official capacity as the Chief of Police under §1983.  Significantly, the plaintiff does not allege individual liability claims against Lt. Morgan under §1983; rather, plaintiff's individual liability claims against Lt. Morgan are alleged under state law.

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992), *citing* 42 U.S.C. §1983.  Section 1983 "is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).  To state a claim under Section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged violation was committed by a person acting under color of state law.  *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008).

"A judgment in a §1983 lawsuit against an official in his official capacity imposes liability against the entity he represents." *Broussard v. Lafayette City-Parish Gov't*, 45 F.Supp.3d 553, 571 (W.D. La. Sept. 5, 2014).  *See also Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015).  Therefore, it is "well settled that a suit

against a municipal official in his or her official capacity is simply another way of alleging municipal liability." *Howell v. Town of Ball*, 2012 WL 3962387, at *4 (W.D. La. Sept. 4, 2012), *citing Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978); *Hafer v. Melo*, 502 U.S. 21 (1991); *See also Burge v. Parish of St. Tammany,* 187 F.3d 452, 468 (5th Cir. 1999)(suit against a government official in his official capacity is a suit against the government entity of which he is an agent); *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005). Because Morgan is an official of LCG and LCG is a defendant in this action, the claims asserted against Morgan in his official capacity are duplicative of the claims asserted against LCG and must be dismissed.

The plaintiff argues that the claims against Lt. Morgan in his official capacity survive the instant motion under the doctrines of *respondeat superior* and supervisory liability. In *Monell,* however, the Supreme Court held that the doctrine of *respondeat superior* does not apply to claims brought under Section 1983. *Monell,* 436 U.S. at 692–93. Instead, supervisors must be directly involved in the allegedly improper conduct, which occurs "if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Torns v. City of Jackson*, 622 F. App'x 414, 417 (5th Cir. 2015), *citing Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987). Here, the complaint pleads neither and accordingly, any

6

claim against Lt. Morgan in a supervisory capacity should be dismissed for failure to state a claim.

Therefore, there are no claims against Lt. Morgan in his official capacity that survive the instant motion, and no federal claims have been pled against him in his individual capacity. Thus, all claims alleged against Lt. Morgan under Section 1983 should be DENIED AND DISMISSED with prejudice.

### 2. *Monell* claims against LCG

The plaintiff asserts three theories of liability under §1983 against LCG. One is that LCG has an overt policy and practice whereby people of color are disproportionally stopped, detained, harassed, subjected to use of force, and shot by LPD officers. Doc. 2 at ¶24. Another is that LCG failed to adequately train and supervise officers in the use of force, de-escalation policy, and search and seizure policy. *Id*. at ¶¶ 21-23. The third is that LCG ratified the actions of Huval and Lavergne by failing to discipline them. *Id.* at ¶¶ 33-34. Though the plaintiff need not offer proof of her allegations at this stage, she still must plead facts that plausibly support each element of §1983 municipal liability under these theories. *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018), *citing Iqbal*, 556 U.S. at 678.

### a. Excessive force

To establish municipal liability under §1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009), *citing Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

With respect to the first factor, an "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A policy is only official when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." *Chavez v. Alvarado*, 550 F.Supp. 3d 439, 456 (S.D. Tex. 2021), *citing Brown v. City of Houston*, 297 F.Supp. 3d 748, 765 (S.D. Tex. 2017), *quoting Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). To plead plausible allegations of a practice or custom so persistent and widespread as to have the force of law, the plaintiffs "must do more than describe the incident that gave rise to [the] injury." *Chavez*, 550 F.Supp. 3d at 456, *citing Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281, 285 (5th Cir.) (quotation marks omitted), *cert. denied*, - U.S. -, 141 S. Ct. 376, 208 L.Ed.2d 97 (2020). The complaint's allegations of the practice or custom "must

contain specific facts." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

While a plaintiff may point to prior occurrences of constitutional violations to plead a *Monell* claim against a municipality, those prior occurrences must be not only similar to conduct at issue in the plaintiff's case but also persistent, as opposed to sporadic or isolated. *Wilder v. Morgan*, 2022 WL 839128 (W.D. La. Mar.18, 2022) (J. Summerhays), *citing Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010). This persistency requirement ensures that the alleged pattern of unconstitutional actions by municipal officers is based on conduct that has "occurred for so long and with such frequency that the course of conduct demonstrates the [municipality's] knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010). The Fifth Circuit also requires the plaintiff to plead more than a list of past actions alleged to be unconstitutional; a plaintiff must place these past occurrences in context to support the inference that the municipality knew about and accepted a wide-spread course of unconstitutional conduct. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 n.4 (5th Cir. 2009).

In *Peterson*, the plaintiff identified 27 excessive force complaints against the Fort Worth Police Department over approximately four years. 588 F.3d at 851. Although *Peterson* involved a case at the summary judgment stage, the Fifth Circuit

affirmed the district court decision holding that these prior occurrences did not support a *Monell* claim, because the plaintiff "failed to provide context" to those 27 excessive force complaints sufficient to show that the complaints reflected municipal policy. *Id.*, 588 F.3d at 851–52.

In this case, the plaintiff's allegations do not show a wide-spread practice or pattern that rises to the level of municipal policy. The plaintiff alleges that between 2010 and 2019, 107 lawsuits were filed against the LPD. However, the Complaint does not show that these lawsuits involved conduct similar to the conduct at issue in this case. With respect to the 15 instances of excessive force cases set forth in the Complaint, these cases were filed over a fifteen-year period -- more than three times longer than the four-year period and 27 complaints that the *Peterson* court found insufficient to establish a municipal policy.

The plaintiff alleges that between 2010 and 2019, the LPD's own statistics show 1,172 use of force reports from LPD officers, which equates to one report approximately every three days. A use-of-force report standing alone does equate to a constitutional violation absent facts showing the context for that use of force. The plaintiff has pled no facts showing that this number of use-of-force reports is so unusual or extreme that it supports an inference of a persistent pattern of excessive force violations. Furthermore, the plaintiff does not place this statistic into context by showing the total number of arrests, nor does he offer comparisons to other,

10

similarly situated municipalities. *But see Flanagan v. City of Dallas*, 48 F.Supp. 3d 941, 953 (N. D. Tex. 2014) (finding a complaint adequately pled an excessive force claim where the plaintiff pled a combination of statistics, past incidents, and statements by city officials).

Considering the foregoing, the plaintiff fails to properly plead a *Monell* claim against LCG for excessive force.

### b. Failure to train

The plaintiff alleges in Count III that her rights were violated by LCG's failure to train, supervise, investigate and discipline in the areas of police use of force, de-escalation techniques, and arrest procedures. *See* Doc. 2 at ¶ 50. The Supreme Court has observed that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. 51, 61 (2011). To state such a claim, a plaintiff must plead that: (1) the training procedures of the municipality's policymaker were inadequate; (2) the policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused the plaintiff's injury. *See Taylor v. Hartley*, 488 F. Supp. 3d 517, 535 (S.D. Tex. 2020), *citing Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000), *quoting Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). *See also Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018), *citing Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001).

11

"Municipal liability doesn't attach merely because 'a particular officer may be unsatisfactorily trained' or 'an otherwise sound program has occasionally been negligently administered.'" *Taylor*, 488 F.Supp. 3d at 535, *quoting City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989). For this Court, the focus must be on the *adequacy* of the training program in relation to the tasks the particular officer must perform. *Taylor*, 488 F.Supp. 3d at 535, *citing Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998). Therefore, to defeat a motion to dismiss, the plaintiff must allege with specificity how the training program in effect is defective in this regard. *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005). Finally, proof that the plaintiff's injury "could have been prevented if the officer had received better or additional training cannot, without more, support liability." *Id.* at 293.

Furthermore, the failure to train must reflect a "deliberate" or "conscious" choice by the municipality. "Deliberate indifference" is "a stringent standard of fault," one "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Taylor*, 488 F.Supp. 3d at 536, *citing Connick*, 563 U.S. at 61. City policymakers are only considered to be deliberately indifferent when they are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, and they choose to retain that program. *Connick*, 563 U.S. at 61. A municipality's deliberate indifference typically requires a plaintiff to allege a pattern of similar constitutional

violations by untrained employees. *Id.* at 62. A plaintiff must generally show that, given the duties assigned to specific officers or employees, "the need for more or different training is obvious, and the inadequacy is likely to result in the violation of constitutional rights." *City of Canton*, 489 U.S. at 390. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. *Connick,* 563 U.S. at 62.

In this case, the plaintiff has not pled facts showing a pattern of similar violations that should have placed LCG on notice of a failure to train. The plaintiff does not allege specific facts about the actual training protocols of the Lafayette Police Department, nor does she describe any deficiencies in the LPD's program in light of the assigned duties of Officers Lavergne and Huval. *See Taylor*, 488 F.Supp.3d at 536 (where plaintiff failed to identify specific training protocols and how they were in adequate, he failed to sufficiently plead a claim for failure to train). *See also Snyder v. Trepagnie*r, 142 F.3d 791, 798 (5th Cir. 1998). Here, the plaintiff hasn't identified a specific training program or shown how it was inadequate as to Officers Lavergne and Huval. The plaintiff's reliance on the lawsuits filed against LCG and LPD does not demonstrate this pattern because, as explained above, the plaintiff's allegations do not show that these lawsuits were grounded on conduct similar to the conduct at issue in the present case. Moreover, the 15 use-of-force

cases cited by the plaintiff do not support her failure-to-train claim for the same reason that they do not support a claim based on a pervasive pattern of misconduct that rises to the level of municipal policy. Specifically, the plaintiff does not plead facts showing that these 15 complaints over a fifteen-year period reflect a persistent pattern of misconduct versus isolated incidents.

Considering the foregoing, the plaintiff has not sufficiently pled that the training procedures of the LPD were inadequate. Furthermore, because of these deficiencies in the plaintiff's pleading, the plaintiff also has not shown the *causation* required by the third element. Thus, the plaintiff does not adequately plead a *Monell* claim for failure to train against LCG.

### c. Failure to discipline

In *Hunter v, City of Houston*, 2021 WL 4481092 at *8 (S.D. Tex. Sept. 29, 2021), the district court noted that "[f]ailure to discipline isn't a common claim, with the Fifth Circuit appearing to have addressed it only eight times in the last twenty years." The essential elements of a failure to discipline claim are (1) municipality failed to discipline its employees; (2) that failure to discipline amounted to deliberate indifference; and (3) the failure to discipline directly caused the constitutional violations in question. *Hunter*, 2021 WL 4481092 at *8, *citing Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009), *citing Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001).

Here, the plaintiff's claim of failure to discipline must be dismissed as entirely conclusory.  The plaintiff alleges in her Complaint that "Chief Morgan and the LPD, as part of LCG, has a history of not properly and adequately disciplining or firing officers, including Officer Lavergne, Officer Huval and John Doe #1, when they engage in illegal and improper conduct…"  Doc. 2, at ¶33.  The plaintiff further alleges that "Chief Morgan investigated the subject incident giving rise to the lawsuit but did not properly or adequately discipline or reprimand Officers Lavergne and Huval. . ."  [*Id*. at ¶34].  Despite alleging that the LPD has a "history" of not disciplining officers, the plaintiff fails to allege any similar incidents wherein officers were not disciplined.

There is also no allegation of deliberate indifference.  To establish deliberate indifference, a plaintiff must produce "proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick,* 563 U.S. at 61, *quoting Board of County Commissioners of Bryan County Oklahoma v. Brown*, 520 U.S. 397, 409–10 (1997).  That "ordinarily" requires a plaintiff to allege a pattern of similar constitutional violations.  *Connick*, 563 U.S. at 62, *citing Board of County Commissioners*, 520 U.S. at 409.  Here, the plaintiff has not alleged other instances where officers weren't disciplined in response to clear constitutional violations, and nothing shows that "city policymakers are on actual or constructive notice" of such

a deficiency. *Connick*, 563 U.S. at 61, *citing Board of County Commissioners*, 520 U.S. at 407.

Consequently, the plaintiff fails to adequately plead a claim of failure to discipline against LCG.

### 3. Individual capacity claims against Officer Lavergne and Huval and qualified immunity

In Counts I and II of her Complaint, the plaintiff alleges that Officers Lavergne and Huval violated the plaintiff's rights to be free from unreasonable seizures and the use of excessive force. The movants argue that the officers are entitled to qualified immunity.

When a plaintiff seeks money damages for alleged violations of constitutional rights, government officials sued in their individual capacities may invoke the defense of qualified immunity. *Traweek v. Gusman,* 414 F.Supp. 3d 847, 860 (E.D. La. 2019). At the pleading stage, the proper procedural framework for addressing a § 1983 claim is first to determine whether the plaintiff has sufficiently pleaded the elements of a constitutional violation; only then does the court proceed to the qualified immunity analysis. *Delacruz v. City of Port Arthur,* 2019 WL 1211843 at *5 (E.D. Tex. Mar. 14, 2019), *citing Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018).

### a. Excessive force

Under the United States Constitution, there is no doubt that a person has the right to be free from the use of excessive force, and "it [is] clearly established the amount of force officers [can] use depend[s] on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)), *cert. denied*, 559 U.S. 1048 (2010); *accord Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012), *cert. denied*, 571 U.S. 826 (2013); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

To succeed on an excessive force claim arising under the Fourth Amendment, a § 1983 plaintiff "must establish: (1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable." *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014), *quoting Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008).  If any of the three elements fails, the plaintiff's claim of excessive force will not succeed.  *Huong v. City of Port Arthur*, 961 F.Supp. 1003, 1006 (E.D. Tex. 1997).

First, the Court addresses the plaintiff's injury.  Although a showing of "significant injury" is no longer required in the context of an excessive force claim, courts "do require a plaintiff asserting an excessive force claim to have 'suffered at

least some form of injury.'"  *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001), *citing Williams v. Bramer,* 180 F.3d 699, 703 (5th Cir. 2001), quoting *Jackson v. R.E. Culbertson,* 984 F.2d 699, 700 (5th Cir.1993).  The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed.

In *Alexander v. City of Round Rock*, 854 F.3d 298 (5th Cir. 2017), the Fifth Circuit reversed dismissal of an excessive force claim, explaining that even insignificant injuries may support an excessive force claim, as long as they result from unreasonably excessive force:

> Although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances. *Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only. Consequently, only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment. In short, as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.

854 F.3d at 309 (internal citations omitted).

Similarly, in *Sam v. Richard*, 887 F.3d 710 (5th Cir. 2018), the Fifth Circuit reversed the decision of the district court, which had concluded that the plaintiff's injuries – which included minor bleeding – were de minimis and granted summary judgment in favor of the defendant officer on plaintiff's excessive force claim.  The

court found that the officer's "use of force was objectively unreasonable at the summary judgment stage," concluding that the plaintiff was "face down on the ground with his hands on his head when [the officer] kneed him in the hip and pushed against a patrol car." *Sam*, 887 F.3d at 714. *See also Bone v. Dunnaway*, 657 Fed.Appx. 258, 262 (5th Cir. 2016) ("Although Bone's allegation of injury could be characterized as de minimis—bruising and a swollen cheek—whether an injury is cognizable depends on the reasonableness of the force, not just the extent of injury."); *Schmidt v. Gray*, 399 Fed.Appx. 925, 928 (5th Cir. 2010) (pain, soreness, and bruising resulting from an officer's slamming a car's trunk lid on a suspect's finger was a legally cognizable injury); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999)("dizziness, loss of breath, and coughing" caused by choking was sufficient injury to assert constitutional violation).

In *Glenn v. City of Tyler*, the plaintiff alleged an excessive force claim after being handcuffed by police. Although the procedural posture of the case involved a motion for summary judgment, the Fifth Circuit explained:

> Other than placing the handcuffs on Glenn, according to Glenn's own testimony, Officer Rhodes did not touch her. Therefore, her sole contention is that the officer put the handcuffs on her too tightly, causing her right wrist to swell. This court finds that handcuffing too tightly, without more, does not amount to excessive force. There is no allegation here that Officer Rhodes acted with malice.

242 F.3d at 314.

In this case, the plaintiff broadly alleges damages for "physical injury, pain and suffering," but she does not allege specifics as to the actual injury. She does not allege that she was handcuffed in a manner that caused injury; in fact, she does not allege that she was handcuffed at all. She alleges that she was "arrested," a fact that the defendants deny. Even assuming the plaintiff's allegations are true, as the Court must at this stage of the proceedings, no specific physical injury is claimed. The plaintiff's claim for damages for "mental and emotional injury" is similarly vague, as it lacks specificity. Although psychological injuries can serve as a basis for §1983 liability, *Flores v. City of Palacios,* 381 F.3d 391, 400–01 (5th Cir.2004), the plaintiff does not specifically allege the facts of her psychological injuries.[2]

In light of the relevant caselaw, it is unclear to the Court whether the plaintiff alleges more than a de minimis injury. The facts of the plaintiff's incident regarding injury are vague; there are questions regarding whether the plaintiff was actually placed in handcuffs or whether her hands were simply pulled to the side to accommodate handcuffing. Acknowledging that any injury can be considered more than de minimis if the use of *any* force is unreasonable under the circumstances, the undersigned finds that the plaintiff fails to allege *any* injury beyond broad and conclusory claims of physical injury and pain and suffering.

---

[2] As noted hereinabove, the bodycam video referenced in the Complaint and the briefing has not been provided to the Court.

Because the plaintiff's Complaint lacks specific facts related to the injury she suffered, the Court cannot determine whether the plaintiff has plausibly alleged a constitutional violation. It is therefore not possible for this Court to analyze the issue of qualified immunity at this juncture. *See, e.g., Goodman v. Harris County*, 571 F.3d 388, 396 (5th Cir. 2009)(explaining that because the plaintiff failed to set forth a §1983 claim, "an analysis of [the defendant's] defense of qualified immunity is unnecessary. Qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity."); *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.").

### b. Illegal seizure

The Fourth Amendment protects the right to be secure from unreasonable seizures. A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, "by means of physical force or show of authority terminates or restrains his freedom of movement *through means intentionally applied.*" *Brendlin v. California*, 551 U.S. 249, 254, (2007)(internal citations and quotation marks omitted). "Physical force is not required to effect a seizure; however, absent physical force, '*submission* to the

assertion of authority'" is necessary. *Carney v. New Orleans City*, 468 F.Supp. 3d 751, 761 (E.D. La. 2020), *citing McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017), *quoting California v. Hodari D.*, 499 U.S. 621, 626 (1991). A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [he was] not free to leave." *Id.*; *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988).

The plaintiff alleges that she was threatened with arrest; that her arms were grabbed by Officers Lavergne and Huval; and that she was actually placed "under arrest." She further alleges that:

> [o]ut of fear for her safety, and at the command of the officers, Dr. West says she will pay the Movers." During this time, Officer Lavergne can be heard repeatedly saying, "Get them paid."

The defendants do not argue that plaintiff has failed to assert sufficient facts regarding her alleged seizure. The defendants instead contend that, because the officers had probable cause to arrest the plaintiff, the brief seizure of her person to effectuate that arrest was reasonable. Defendants further argue that as long as the officers believed "theft of services" to be a valid and existing law, her claim of unreasonable seizure fails.

This Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).

In her complaint, the plaintiff alleges that Officer Lavergne threatened her with arrest if she did not pay the movers.  The plaintiff asserts, however, that she did not refuse to pay the movers, she merely refused to pay the excess amount that had not been negotiated. Doc. 2 at ¶ 11.  Thus, the plaintiff alleges that there was no "theft" upon which to arrest the plaintiff.  Thus, the plaintiff is arguing that there was no probable cause to arrest her -- because she did not commit a "theft" – and the seizure that ensued was not reasonable.

Based upon the facts alleged in the Complaint, the undersigned concludes that the plaintiff has adequately alleged a Fourth Amendment claim of an unconstitutional, unreasonable seizure, as she alleges that both physical force and actual submission to the assertion of authority occurred during the incident in question, and she alleges facts to support her allegation that there was no probable cause for the seizure.

Finally, with respect to the issue of qualified immunity, it is well-settled that a warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment.  *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 391 (5th Cir. 2017), as revised (Mar. 31, 2017), *citing Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013).  Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that

the suspect has committed, is committing, or is about to commit an offense." *Davidson*, 848 F.3d at 391, *citing Hogan*, 722 F.3d at 731. Officers are therefore entitled to qualified immunity unless there was no actual probable cause for the arrest and the officers were objectively unreasonable in believing there was probable cause for the arrest. *See Crostley v. Lamar Cty.*, 717 F.3d 410, 422–23 (5th Cir. 2013); *see also Cooper v. City of La Porte Police Dep't*, 608 Fed.Appx. 195, 199 (5th Cir. 2015) ("[O]fficers are entitled to qualified immunity unless there was not probable cause for the arrest and a reasonable officer in their position could not have concluded that there was probable cause for the arrest."). This probable cause may be for any crime and is not limited to the crime that the officers subjectively considered at the time they perform an arrest. *Davidson*, 848 F.3d at 391, *citing Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).

In this case, the plaintiff asserts that no reasonable officer in his or her position could have concluded that there was probable cause for her seizure or arrest, because the plaintiff made it clear at the time of the incident that she was willing to pay the movers; she simply disputed the amount to be paid. These facts sufficiently rebut the officers' arguments that they are entitled to entitled to qualified immunity at this time.

24

### 4.  State law claims

The plaintiff has alleged state law claims of battery, assault, and intentional infliction of emotional distress against Officers Huval and Lavergne, and vicarious liability claims of the same nature against LCG and Lt. Morgan.  In their motion to dismiss, the movants provide nothing more than a cursory argument that the plaintiff's state law claims should be dismissed on grounds the officers are entitled to qualified immunity, without addressing each state law claim in any detail.

To prevail on a motion to dismiss an ordinary claim under Fed. R. Civ. P. 12(b)(6), the defendant "must show" that the plaintiff is unable to satisfy the applicable standard for stating a claim under Fed. R. Civ. P. 8(a).  *Cantu v. Guerra*, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021), *citing Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (discussing standard applied prior to *Twombly*).  This means that, despite the natural focus on the allegations of the operative pleading, the movant has the burden on a motion to dismiss under Rule 12(b)(6).  *Newton v. Bank of Am., N.A.*, 2019 WL 6048000, at *2 (W.D. Tex. Aug. 29, 2019).  Courts may find conclusory statements insufficient to support dismissal under Rule 12(b)(6), especially when the movant disregards relevant portions of the operative pleading.  *See # 1 Fan Co., LLC v. Pepco Licensed Prod., Inc.*, 2011 WL 13269165, at *2 (W.D. Tex. Mar. 16, 2011).  When the movant presents "no

argument or authority for the plaintiffs to refute or this Court to consider," the movant has failed to carry its burden. *Id.*

In her Complaint, the plaintiff alleges state law claims of battery, assault, and intentional infliction of emotional distress against Officers Huval and Lavergne, with vicarious liability claims of the same nature against LCG and Lt. Morgan. The portion of the movants' motion to dismiss that addresses the plaintiff's state law claims consists of two paragraphs and less than one page. Significantly, the movants do not address each of the claims as pled by the plaintiff; the elements of any of the claims; and the particulars of how the claims. as pled. are insufficient. The movants cite to Article 220 of the Louisiana Code of Criminal Procedure[3] and Louisiana Revised Statute 9:2798.1,[4] arguing, *in globo* as to all of the state law claims, that the force used by the officers was reasonable.

---

[3] Article 220 states: "A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained." La. Code Crim. Proc. Ann. art. 220.

[4] La. Rev. Stat. 9:2798.1(B) states: "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. Stat. Ann. §9:2798.1.

After review of this portion of the movants' brief, the undersigned concludes that the movants have failed to satisfy their Rule 12(b)(6) burden to show that they are entitled to dismissal of the plaintiff's state law claims.

### 5. Amendment of the Complaint

The Court must consider whether the plaintiff should be given an opportunity to amend the complaint and re-plead her *Monell* claims.  Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely" grant leave to amend when "justice so requires." "Courts should ordinarily grant a plaintiff at least one opportunity to amend before dismissing a complaint with prejudice for failure to state a claim."  *Reed v. Gautreaux*, 2019 WL 6219780, at *3 (M.D. La. Nov. 21, 2019), *citing Matthews v. Stolier*, 2014 WL 5214738 at *12 (E.D. La. Oct. 14,2014); *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000).  One key exception to this generous standard is where the amendment would be futile.  *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).  In determining futility, courts "apply the same standard of legal sufficiency as applies to Rule 12(b)(6)."  *Id.* at 873.

The plaintiff has not previously amended her complaint, which weighs in favor of allowing her to amend at this juncture.  Granting leave to amend will not unduly delay the proceeding because the matter was only recently filed and is not yet set for trial.  Finally, the undersigned finds that an amendment of the plaintiff's

claims to address the deficiencies outlined in this ruling would not be futile. Accordingly, the undersigned determines that the plaintiff should be permitted to amend her Complaint and address the deficiencies outlined in this ruling. The amended complaint must be filed with twenty (20) days of the date of the Court's Judgment on the instant motion.

### C. Conclusion

Considering the foregoing,

**IT IS RECOMMENDED** that the motion to dismiss all claims alleged against Lt. Morgan under Section 1983, which are alleged against him in his official capacity, should be GRANTED, and these claims should be DENIED AND DISMISSED with prejudice.

**IT IS FURTHER RECOMMENDED** that the motion to dismiss the plaintiffs' *Monell* claims against LCG for excessive force, failure to train, and failure to discipline should be GRANTED WITHOUT PREJUDICE, subject to the right of the plaintiff to amend her Complaint to address the deficiencies noted in this Report. The plaintiff shall have 14 days from the date the Judgment of the district judge in connection with this motion to amend her Complaint.

**IT IS FURTHER RECOMMENDED** that the motion to dismiss the plaintiffs' claims against Officer Lavergne and Officer Huval in their individual capacities for excessive force should be GRANTED WITHOUT PREJUDICE,

subject to the right of the plaintiff to amend her Complaint to address the deficiencies noted in this Report.  The plaintiff shall have 14 days from the date the Judgment of the district judge in connection with this motion to amend her Complaint.  No finding as to qualified immunity should be made at this time.

**IT IS FURTHER RECOMMENDED** that the motion to dismiss the plaintiffs' claims against Officer Lavergne and Officer Huval in their individual capacities for unreasonable seizure is DENIED.

**IT IS FURTHER RECOMMENDED** that the motion to dismiss the plaintiffs' state law claims is DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 13th day of May, 2022 at Lafayette, Louisiana.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**